916 So.2d 741 (2005)
THE FLORIDA BAR, Complainant/Cross-Respondent,
v.
Bruce Edward COMMITTE, Respondent/Cross-Complainant.
No. SC03-1203.
Supreme Court of Florida.
October 12, 2005.
Rehearing Denied December 6, 2005.
*742 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel and Olivia Paiva Klein, Bar Counsel, The Florida Bar, Tallahassee, FL, for Complainant/Cross-Respondent.
Bruce Committee, Pro se, Pensacola, FL, for Respondent/Cross-Complainant.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Bruce Edward Committe. We have jurisdiction. See art. V, § 15, Fla. Const.

I. FACTS
On July 8, 2003, The Florida Bar filed a one-count complaint against Bruce Edward Committe, alleging that he knowingly failed to comply with legally proper discovery requests, filed two frivolous federal lawsuits, and abused the legal process. The referee's findings follow.
On July 16, 1993, attorney William E. Gardner obtained a money judgment against Committe in Arlington, Virginia, in the amount of $4,527.21 plus interest. The *743 judgment was domesticated and recorded in Pensacola, Florida, where it was referred to a local collection agency, Collection Services, Inc. (CSI). CSI, in turn, referred the case to attorney Stephen M. Guttmann, who appeared in the debt collection suit against Committe on June 11, 1998. Guttmann issued a notice of taking deposition with a subpoena duces tecum to Committe to appear on June 24, 1998. Within days, Committe moved for a protective order, claiming that the deposition was "burdensome" because he had prior plans to be out of state. Committe's motion included alternative dates when he was available. Relying on these alternative dates, Guttmann filed an amended notice of taking deposition and subpoena, rescheduling the deposition for June 18, 1998.
The day before the deposition was to be taken, Committe filed a second motion for a protective order based on the Fair Debt Collection Practices Act (FDCPA). In his motion, he claimed that Guttmann was a "debt collector" under the statute, and the FDCPA prohibited Guttmann from taking his deposition since he had been notified in the motion to "cease communication" with Committe. Committe, believing that his motion acted as a stay, did not appear at the deposition pursuant to the subpoena duces tecum. Guttmann set Committe's motion for a hearing before Judge G.J. Roark, III, who denied it. Specifically, Judge Roark found that, although Guttmann was a "debt collector" under the statute, the FDCPA did not prohibit him from engaging in the litigation activity of a deposition in aid of execution on a money judgment. On August 22, 1998, Committe filed a motion for rehearing, citing to Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), as grounds for reversing Judge Roark's prior ruling. Guttmann set the motion for rehearing before Judge Roark, who denied the motion.
Guttmann filed a third notice of taking deposition and subpoena duces tecum, setting Committe's deposition for August 2, 1999. Committe failed to appear, but instead, on the day of the deposition, he filed a third motion for protective order, alleging that he needed to appeal Judge Roark's decision to deny his motion for rehearing. Guttmann then filed a motion for contempt for failure to appear pursuant to the notice of taking deposition and subpoena. On October 22, 1999, Judge Roark held Committe in contempt of court for failure to comply and sentenced Committe to sixty days in jail for contempt. Committe, however, was given thirty-five days to purge the contempt by complying with the terms of the order, including appearing for a deposition on November 22, 1999.
On October 15, 1999, while the motion for contempt in the county court action was pending, Committe filed a federal court action against Guttmann and Gardner, claiming over $3 million in damages based on alleged violations of the FDCPA and the Florida Consumer Collection Practices Act (FCCPA). On October 20, 2000, while the first federal case was still pending, Committe filed a second complaint against Guttmann, with similar allegations but adding another allegation regarding substitute service of process. Committe filed a Chapter 7 bankruptcy petition, in which he stated that his federal lawsuit against Guttmann had a market value of $1000, despite the fact that his federal suit claimed over $3 million in damages. On November 16, 1999, Committe proposed to settle his federal lawsuit against Guttmann for a total of $4500. On June 15, 2001, Judge Roger Vinson granted summary judgment to Guttmann in the first federal lawsuit, finding that Committe's action *744 amounted to "an abuse of legal process." He noted that in light of Committe's conduct in the state court proceedings and the fact that his two federal actions raised the same frivolous claims, Committe's intent was to harass Guttmann. Further, Judge Vinson held that Committe's case was "brought in bad faith" and sua sponte ordered Committe to show cause why rule 11 sanctions[1] should not be imposed. In a separate order, dated December 18, 2001, Judge Vinson found that rule 11 sanctions were warranted and ordered Committe to pay Guttmann his "reasonable fees and costs as a sanction for his bad faith in filing this frivolous action."[2] Committe appealed Judge Vinson's order, but the Eleventh Circuit Court of Appeals affirmed the lower court's decision granting summary judgment and imposing rule 11 sanctions.
During the proceedings before the referee, Committe testified that he had substantial experience in filing claims under the FDCPA and FCCPA and that he had almost five years of prior legal experience in this particular field before he filed the two federal lawsuits against Guttmann. After listening to all of the testimony and reviewing the evidence, the referee found that Committe's two federal lawsuits were frivolous and that he lacked a statutory basis or prevailing case law to support his claims. The referee also found that Committe "knowingly and intentionally failed to comply with a legally proper discovery request by Mr. Guttmann by failing to appear for his deposition" and had no reasonable grounds for failing to appear. The referee explicitly found that Committe abused the legal process by filing two federal actions in order to harass Guttmann for his attempts to collect a money judgment. The referee concluded that Committe violated Rules Regulating the Florida Bar 4-3.1 (meritorious claims and contentions), 4-3.4(c) (knowingly disobey an obligation under the rules of a tribunal), 4-3.4(d) (failure to comply with a legally proper discovery request), 4-8.4(a) (violation of bar rules), and 4-8.4(d) (conduct prejudicial to the administration of justice).
In assessing his recommended discipline, the referee found that three aggravating circumstances applied: Committe engaged in a pattern of misconduct; he committed multiple offenses; and he had substantial experience in the law. He also noted in mitigation that Committe had no prior disciplinary record, made a full disclosure, and was cooperative in the disciplinary proceedings. After balancing these factors, the referee recommended that Committe receive a private reprimand. Committe filed a petition for review in this Court, arguing among other things that there was no competent and substantial evidence that he violated any Bar rule. The Florida Bar filed its answer and cross-petition, contending that the referee's recommended discipline was insufficient and that the Bar should be entitled to its costs.

II. ANALYSIS

Preliminary Motions
Committe first claims that the grievance committee meeting of The Florida Bar violated section 286.011, Florida Statutes (2003), because Committe was not allowed to attend the meeting, no public notice was given, and no transcript of the meeting was recorded. The grievance committee meetings of the Bar are private, *745 and therefore the Bar is justified in prohibiting Committe from attendance. See R. Regulating Fla. Bar 3-7.1(a)(1). Given that The Florida Bar is "an official arm of the court," see R. Regulating Fla. Bar, Introduction, this Court has previously rejected the Legislature's power to regulate which Florida Bar files were subject to public records law, holding that "[n]either the legislature nor the governor can control what is purely a judicial function." Fla. Bar re Advisory Opinion, 398 So.2d 446, 447 (Fla.1981) (holding that public records law did not apply to unauthorized practice of law investigative files maintained by The Florida Bar); see also Locke v. Hawkes, 595 So.2d 32 (Fla.1992). Moreover, the Bar rules regarding confidentiality are protected by the constitution. Article I, section 24(d), of the Florida Constitution, which grants access to public records and meetings, specifically provides that "[r]ules of court that are in effect on the date of adoption of this section that limit access to records shall remain in effect until they are repealed." In this case, rule 3-7.1 was in effect years prior to the constitutional right to access public records and meetings. Hence, we reject Committe's argument that the Bar rules regarding confidentiality violated section 286.011(1), Florida Statutes (2003).
In this same argument, Committe claims that two members of the grievance committee were "commanded" to discuss the investigation with him, which they failed to do. To the extent that Committe alleges that this denied him due process, his argument must fail. Due process was met because Committe was served with notice of the Bar's charges and was afforded an opportunity in the disciplinary hearing to be heard and defend himself. See, e.g., Fla. Bar v. Rubin, 709 So.2d 1361, 1363 (Fla.1998) ("Prior to being found guilty of the charges at issue here, Rubin was afforded appropriate notice and a full opportunity to be heard during the final hearing before the referee. This was sufficient to satisfy the demands of due process.").

Sufficiency of the Referee's Report
In his second claim, Committe contends that the Bar's complaint was insufficient because the complaint failed to connect each allegation to a specific rule, and this failure prevented him from preparing an effective defense. We disagree and find that the Bar complied with rule 3-7.6(h)(1)(B), which requires only that the Bar "set forth the particular act or acts of conduct for which the attorney is sought to be disciplined." There is no requirement for the Bar to connect every alleged item of misconduct to a specific rule violation. The Bar's complaint specifically addressed what conduct it relied upon to show Committe violated his professional obligations. It is the combination of these acts that led to the conclusion that Committe violated the rules. As addressed above, due process is satisfied where the attorney has notice and an opportunity to be heard. See, e.g., Fla. Bar v. Fredericks, 731 So.2d 1249, 1254 (Fla.1999) ("Accordingly, because Fredericks was made aware of the conduct alleged by the Bar to be unethical and had the opportunity to be heard as to this conduct, there was no violation of due process."). In fact, Committe's very response demonstrates that he was adequately informed and had an opportunity to be heard, given the strenuous arguments he presented to both the referee and this Court as to why he believed his acts did not violate any ethical rules.

Findings of Fact
Committe claims that there is no competent, substantial evidence to support the referee's findings that he violated the *746 Bar rules, making a repetitive argument that his conduct was legal. In reviewing this type of claim, the Court has set forth the appropriate standard of review as follows:
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Fla. Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996). Committe cannot meet this burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings. Fla. Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997). Committe has not met this burden.
As found by the referee, after Guttmann attempted to depose Committe, Committe filed a motion for protective order raising his FDCPA claim in state court, which was denied. He then filed a motion for rehearing, which was also denied. Guttmann attempted to take Committe's deposition for a third time and set the date for August 2, 1999. On the date the deposition was scheduled to be taken, Committe failed to appear and filed his third motion for protective order, relying only on his claim that this was necessary because he needed to appeal the decision relating to the rehearing. When this course of action was not successful, Committe filed two successive claims in the federal district court, again raising the same claim which was already unsuccessful in state court. In the federal action, Committe sought over $3 million; however, when he filed bankruptcy, he admitted that his claim had no such value by stating this lawsuit had a market value of only $1000. United States District Judge Vinson denied all of Committe's claims in an order granting summary judgment to Guttmann, explicitly finding that Committe filed the federal action in order to harass Guttmann and that his action amounted to "an abuse of the legal process." Committe was experienced in this area of the law and should have been aware that his claims lacked a good-faith basis in law. Committe does not address the successive nature of his actions but instead reargues the merits of his claims, asserting that he had a proper legal foundation for all of his claims because he was merely trying to develop the law in this area.
Committe's claims revolve around his often-repeated contention that the FDCPA "stop communication" clause allows him to stop all communications with an attorney debt collector, including attending a deposition. This is contrary to the record evidence and the holding of Heintz v. Jenkins, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), of which Committe was aware before he filed his federal suits. Specifically, in Heintz, an attorney debt-collector argued that the term "debt collector" in the FDCPA does not apply to attorneys, in part because if it did, it would create an anomaly in the law since an attorney would never be able to file a lawsuit against a nonconsenting consumer in light of the fact that 15 U.S.C. § 1692c(c) (1988) requires a "`debt collector' not to `communicate further' with a *747 consumer who `notifies' the `debt collector' that he or she `refuses to pay' or wishes the debt collector to `cease further communication.'" Heintz, 514 U.S. at 296, 115 S.Ct. 1489. The United States Supreme Court rejected this argument as follows:
We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that wayif only because that provision has exceptions that permit communications "to notify the consumer that the debt collector or creditor may invoke" or "intends to invoke" a "specified remedy" (of a kind "ordinarily invoked by [the] debt collector or creditor"). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." The language permits such a reading, for an ordinary court-related document does, in fact, "notify" its recipient that the creditor may "invoke" a judicial remedy. Moreover, the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies. We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.
Heintz, 514 U.S. at 296-97, 115 S.Ct. 1489. The referee was clearly bothered by this same problem, questioning Committe on the record as to why Committe believed that there was a justiciable issue of fact or law for the federal lawsuits based on the plain holding in Heintz. Committe responded by asserting that the above reasoning stated in Heintz was merely dicta and thus had no authoritative value. Again, Committe misses the point. Presenting such an argument once or moving for a rehearing is one thing. In this case, Committe argued the same ground numerous times, and when he was not successful in state court, he filed two federal suits raising the same previously denied claims. Moreover, his actions in filing a claim for $3 million in damages against Guttmann and then admitting his claim was worth only about $1000 further supports the referee's finding that Committe's intention in filing the federal claims was merely to harass Guttmann.
Committe claims that prosecuting him for the filing of these FDCPA lawsuits would have a chilling effect on other attorneys. This claim is without merit. This Court denied a similar claim in Florida Bar v. Richardson, 591 So.2d 908 (Fla. 1991):
Neither the Bar nor this Court wishes to stifle innovative claims by attorneys. Nevertheless, under the rules of professional conduct, the pursuit of imaginative claims is not without limit. The standard embodied in rule 4-3.1, requiring a good-faith argument for the extension, modification, or reversal of existing law, is broad enough to encompass those cases where the claims are the result of innovative theories rather than, as here, an obsessive attempt to relitigate an issue that has failed decisively numerous times. The federal court in this case specifically found this claim to be frivolous and malicious.
Id. at 910-11.
In the case at hand, the referee found that these multiple attempts to relitigate *748 this same nonmeritorious and frivolous issue were without a good-faith basis in the law. Moreover, the referee found these pleadings were filed for the purpose of harassing Guttmann. Although Committe attempts to show that the referee's findings were unsupported by the record, mostly relying on his testimony before the referee and his argument that some court could find his arguments plausible, he has failed to meet his burden in showing that the findings are "clearly erroneous." See, e.g., Spann, 682 So.2d at 1073. The record is full of competent and substantial evidence to support this finding, including Committe's own pleadings and the federal judge's written findings which reached the same conclusion and even imposed rule 11 sanctions sua sponte. Accordingly, we adopt the referee's findings of fact and recommendations as to guilt.

Cross-Appeal
The Bar filed a cross-appeal, contending that the referee's recommended discipline was too lenient and that a ninety-one-day suspension is the appropriate level of discipline. In reviewing the referee's recommendation as to discipline, this Court's scope of review is somewhat broader because this Court has the ultimate responsibility to order the appropriate sanction. Fla. Bar v. Lawless, 640 So.2d 1098, 1100 (Fla.1994). The sanction resulting from a Bar disciplinary proceeding must be fair to society, fair to the attorney, and severe enough to deter other attorneys from similar misconduct. Id. As a general rule, when evaluating a referee's recommended discipline, the Court will not second-guess a referee's recommended discipline as long as that discipline (1) is authorized under the Florida Standards for Imposing Lawyer Sanctions (Standards), and (2) has a reasonable basis in existing case law. Fla. Bar v. McFall, 863 So.2d 303, 307 (Fla.2003). For the following reasons, we agree that the referee's recommendation for a private reprimand is too lenient[3] but decline to impose a ninety-one-day suspension.
First, the referee's recommended discipline is contrary to the standards. Specifically, standard 6.2 sets forth the appropriate standards for abuse of the legal process:
6.22 Suspension is appropriate when a lawyer knowingly violates a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
6.23 Public reprimand is appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
6.24 Admonishment is appropriate when a lawyer negligently fails to comply with a court order or rule, and causes little or no injury to a party, or causes little or no actual or potential interference with a legal proceeding.
In this case, the referee did not find that the abuse of legal process was based on a negligent act. Instead, the referee explicitly found Committe "knowingly and intentionally failed to comply with a legally proper discovery request" and "knowingly failed to obey the rules of civil procedure by failing to appear at his third scheduled deposition." He also found that Committe abused the legal process by filing "two nonmeritorious and frivolous federal lawsuits *749 for the purpose of harassing Mr. Guttmann" and by "failing to appear and filing motions for protective orders on what he should have known were frivolous grounds." The two federal lawsuits clearly harmed Guttmann because they were filed for the purpose of harassment and further caused Guttmann to hire an attorney to defend the suits. Since Committe's acts were intentional and knowing and, further, since he caused injury or potential injury to a party, suspension is the presumed discipline.
A suspension is likewise supported by prior case law. In Florida Bar v. Richardson, 591 So.2d 908 (Fla.1991), which consisted of two different Bar proceedings both arising from the same facts, an attorney was suspended after engaging in similar misconduct. In the first proceeding, while Richardson represented the personal representative in a probate proceeding, the judge determined that Richardson's fee was excessive. Richardson appealed that decision, arguing that the judge lacked jurisdiction because the payment was made by the personal representative and not the estate. The district court found the argument to be without merit and ordered a calculation of the reimbursement of the excessive fee to the estate. Id. at 909. After the calculation by the trial court, Richardson appealed again. The second appeal was dismissed as untimely, and Richardson was suspended for ninety-one days in a Bar proceeding for his excessive fee charge. Id. After Richardson unsuccessfully sought two writs of mandamus from this Court, he then filed a federal complaint in the United States District Court for the District of Columbia, stating that his civil rights were violated because the trial judge ruled without jurisdiction. The federal court granted the defendant's motion to dismiss and imposed rule 11 sanctions on Richardson, finding that the "complaint [was] both manifestly frivolous and malicious." Id. at 910. This Court held that a private reprimand was insufficient and instead imposed a sixty-day suspension for his frivolous filings.
Similarly, Committe attempted to relitigate an issue that failed numerous times for the purpose of harassment. Both Richardson and Committe filed frivolous federal lawsuits claiming absurd damage amounts and were sanctioned under rule 11. The decisions are factually similar with the one exception being that Richardson was previously disciplined for acts stemming from the same isolated incident, while Committe was disciplined for the entirety of his actions in one proceeding.
Committe repeatedly attempted to relitigate the same nonmeritorious issue in an attempt to frustrate the legal process and to harass a attorney debt-collector who had every legal right to depose him. All during this time, Committe offered to settle these frivolous claims for pennies on the dollar and valued these claims at next to nothing in his own bankruptcy proceeding. His knowledge of the frivolous nature of his lawsuits makes his conduct even more unprofessional. Perhaps even more troubling to this Court is that even now, Committe appears to not understand the basic obligations imposed on attorneys. Upon review of all of the facts, the standards, and prior case law, we find a ninety-day suspension to be the appropriate level of discipline, to be followed by a one-year probation. See Richardson, 591 So.2d at 911. Prior to the expiration of his probation, Committe must complete The Florida Bar's practice and professionalism enhancement program entitled, "Professionalism Workshop."

Costs
In the final claim of the cross-petition, the Bar contends that the referee should have awarded it costs since it prevailed. *750 The Bar failed to file an affidavit of costs with the referee, and hence the report failed to include any findings or recommendations as to costs, contrary to rule 3-7.6(k)(1)(E). Accordingly, this Court remanded this portion of the report to the referee. The referee has now submitted a supplemental report stating that respondent has stipulated that the Bar reasonably incurred costs of $4,252.55, as set forth in the Bar's affidavit filed with the Court on April 14, 2004.

III. CONCLUSION
Based on the above, we approve the referee's findings of fact and recommendations as to guilt but reject the recommended discipline and instead impose a suspension. Bruce Edward Committe is hereby suspended from the practice of law for ninety days, to be followed by a one-year probation. Further, during this time, Committe shall complete The Florida Bar's practice and professionalism enhancement program, "Professionalism Workshop." The suspension will become effective thirty days from the date of this opinion so that Committe can close out his practice and protect the interests of existing clients. If Committe notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Committe shall accept no new business from the date this opinion is filed until the suspension is completed.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Bruce Edward Committe in the amount of $4,252.55, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See generally Fed.R.Civ.P. 11.
[2] The federal court later determined this amount to be $15,382.50 for attorney fees and $649.50 for costs.
[3] A private reprimand is now termed an admonishment and is only appropriate where this Court finds an attorney's misconduct to be "minor." R. Regulating Fla. Bar 3-5.1(b); Fla. Stds. Imposing Law. Sancs. 2.6; Fla. Bar v. Kramer, 593 So.2d 1040, 1041 (Fla.1992).