[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13433
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-80182-KAM

TOWN OF GULF STREAM,
a municipality organized and existing under the laws
of Florida on its own behalf and on behalf of those
municipalities similarly situated,
WANTMAN GROUP, INC.,
a domestic company on its own behalf
and on behalf of those companies similarly situated,

Plaintiffs - Appellants,

versus

MARTIN E. O'BOYLE,
an individual,
CHRISTOPHER O'HARE,
an individual,
WILLIAM RING,
an individual,
JONATHAN O'BOYLE,
an individual,
DENISE DEMARTINI,
an individual,
GIOVANI MESA,
an individual, et al.,

Defendants - Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

———————————————

(June 21, 2016)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

The Town of Gulf Stream, Florida ("Gulf Stream" or the "town") and its

contractor Wantman Group, Inc. ("Wantman") (collectively the "plaintiffs") appeal

the dismissal of their class action complaint[1] under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964(c).  The

plaintiffs' complaint was premised on, among other actions, the defendants'

alleged efforts to inundate the town with public records requests in an attempt to

cause a violation of Florida's Public Records Act, Fla. Stat. § 119.07 (the "Act"),

and then to threaten litigation and the possibility of liability for attorneys' fees to

---

[1] The plaintiffs defined the proposed class to include the following:

All state or local municipalities, municipal agencies, or private contractors in the
State of Florida, who have been served with a public records request by any of the
Defendants and who either (a) paid a settlement amount in conjunction with, or to
resolve the public records request; or (b) incurred attorneys' fees and costs to
respond to or litigate against public records requests from any of the Defendants.

Compl. ¶ 31, Doc. 1.  Citations to "Doc." refer to docket entries in the district court record in this
case.

2

extort an unreasonable settlement.  The district court recognized the "very difficult situation" the plaintiffs allegedly found themselves in, Doc. 47 at 4, but nevertheless held that the plaintiffs failed to allege at least two predicate acts in support of their RICO claim.  After careful review, we agree that the plaintiffs' allegations, although troubling, fail to state a claim under RICO.  Therefore, we affirm.

## I.

Gulf Stream is a tiny town of under 1,000 residents and just 17 full time employees.[2]  The defendants—Martin E. O'Boyle, William F. Ring, Christopher O'Hare, Jonathan R. O'Boyle, Denise DeMartini, and their associated companies—pummeled the town with nearly 2,000 public records requests, many of them frivolous, with no intention of actually reviewing the results.  Examples of such requests included

- "All email addresses created or received by the Town of Gulf Stream," Compl. Ex. B, Doc. 4-2 at 2 (No. 1);

- "All phone numbers in the town's records," *id.* (No.3); and

- "Any and all records containing a social security number," *id.* at 10, No. 322.

---

[2] We derive these facts from the complaint's well-pled allegations, which we accept as true for purposes of the motions to dismiss.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

These and other bogus requests were "an essential first-step" in a "scheme to defraud and extort money from the class members." Compl. ¶ 37, Doc. 1.

The purpose of this onslaught of records requests was to induce a violation of the Act and then threaten a lawsuit, or actually file one, which could entitle the defendants to prevailing party attorneys' fees under Fla. Stat. § 119.12.[3] "It is this threat of prevailing party attorneys' fees," the plaintiffs alleged, "that is the nucleus around which the Defendants created their scheme to defraud and extort, and organized their RICO Enterprise to carry out that scheme." Compl. ¶ 52, Doc. 1. The defendants then demanded unreasonable settlements and threatened to file more frivolous records requests if the town did not settle the claims. Since 2013, the defendants have filed 43 public records suits against the town.[4]

---

[3] Florida Statutes § 119.12 provides:

> If a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that such agency unlawfully refused to permit a public record to be inspected or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees.

Fla. Stat. § 119.12.

[4] In addition to the public records disputes litigated in state court, Martin O'Boyle and the town have had other disagreements, some of which have been litigated in federal court. *See, e.g.*, *O'Boyle v. Thrasher, Ward, & Town of Gulf Stream*, No. 15-10997, __ F. App'x __, 2016 WL 158757 (11th Cir. Jan. 14, 2016) (affirming the district court's dismissal of O'Boyle's claims against the town under 42 U.S.C. § 1983); *O'Boyle v. Town of Gulf Stream, et al.*, No. 9:14-cv-80317-DMM (S.D. Fla. Mar. 30, 2015) (granting the defendants' motion for summary judgment and dismissing a First Amendment challenge to the town's sign ordinance), *appeal docketed*, No. 15-13964 (11th Cir. Sept. 3, 2015). We recently affirmed the award of attorneys' fees in the

4

In addition, defendant O'Hare employed aliases when making public records requests to avoid incurring a special service charge the town would have otherwise imposed. Florida authorizes the town to condition public records production on the payment of certain costs and expenses, but only "[i]f the nature or volume of public records requested to be inspected or copied . . . is such as to require extensive use of information technology resources or extensive clerical or supervisory assistance by personnel of the agency involved, or both." Fla. Stat. § 119.07(4)(d). When the town began to assess special service charges against O'Hare for his voluminous requests, he started using fake names to hide his identity.

The defendants also lodged a bogus public records request with Wantman, a government contractor also covered by the Act. *See* Fla. Stat. § 119.0701.[5] When the defendants did not receive the document requested, they filed suit and promptly demanded nearly $4,000 to settle the claim.

---

§ 1983 action. *O'Boyle v. Thrasher, Ward & Town of Gulf Stream*, No. 15-10997, __ F. App'x __, 2016 WL 1426013 (11th Cir. Apr. 12, 2016).

[5] During the relevant time, Fla. Stat. § 119.0701(2) (2003) provided that "each public agency contract for services must include a provision that requires the contractor to comply with public records laws." Florida recently amended this statute to specify precisely when a public records requester may bring suit against a contractor. *See* 2016 Fla. Law Serv. ch. 2016-20 (CS/HB 273) (codified at Fla. Stat. § 119.0701(3)-(4) (2016)).

5

Based on these and similar allegations, the plaintiffs filed a class action complaint on their own behalf and on behalf of other similarly situated state or local municipalities, municipal agencies, or private contractors.  They alleged that each defendant committed at least one predicate act of mail fraud, wire fraud, or extortion, constituting a pattern of racketeering activity in violation of RICO, 18 U.S.C. §§ 1962(c), 1964(c).  The defendants moved to dismiss arguing, among other points, that neither filing frivolous public records requests nor threatening to file or actually filing a lawsuit is a predicate act under RICO.  The district court agreed, granted the defendants' motions to dismiss, and dismissed the case with prejudice.  This appeal followed.

## II.

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks and citation omitted).  A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is insufficient if it "tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotations marks and citation

6

omitted).  To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.

To establish a federal civil RICO violation under §§ 1962(c) and 1964(c), the plaintiffs must prove the conduct of an enterprise through a pattern of racketeering activity and an injury to business or property by reason of the RICO enterprise.  *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).  The district court dismissed the plaintiffs' RICO claim on the ground that the plaintiffs failed to allege a pattern of racketeering activity.  We therefore focus on this element of the claim.

A RICO "pattern of racketeering activity" requires at least two "qualifying predicate acts," each of which constitutes "a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004).  The plaintiffs argue that they have adequately pled two types of predicate acts:  (1) extortion under the Hobbs Act, 18 U.S.C. § 1951, and (2) mail and wire fraud under 18 U.S.C. §§ 1341, 1343.  *See* 18 U.S.C. § 1961(1) (listing violations of the Hobbs Act and the mail and wire fraud statutes).  We consider each type of predicate act in turn.

7

A.

The Hobbs Act prohibits extortion, defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The plaintiffs contend that the defendants' "systematic use of unjustified lawsuits as part of a more extensive extortion scheme to obtain money" supports a claim of extortion under the Hobbs Act. Appellants' Br. at 18. Our precedent commands otherwise.

We held in *United States v. Pendergraft* that a "threat to file litigation against [the government], even if made in bad faith and supported by false affidavits, [was] not 'wrongful' within the meaning of the Hobbs Act." 297 F.3d 1198, 1208 (11th Cir. 2002). The issue was whether a threat to add a bogus claim in a federal lawsuit against a county government in an effort to force a large settlement could support a Hobbs Act violation. "[U]nder our system," we explained, "parties are encouraged to resort to courts for the redress of wrongs and the enforcement of rights." *Id.* at 1206. Thus, "litigants may be sanctioned for only the most frivolous of actions." *Id.* And even then, such sanctions—through tort actions for malicious prosecution, for example—"are heavily disfavored." *Id.* We also expressed confidence in the "time-tested procedures" of the courts to resolve disputes in litigation by "separating validity from invalidity, honesty from

8

dishonesty." *Id.* Moreover, citizens have a constitutional right to petition the government for redress under the First Amendment. *Id.* at 1207. For these reasons, we rejected the contention that a threat to file litigation against the government can trigger Hobbs Act liability. *Id.* at 1206-1207.

We clarified in *Raney*, a civil RICO case, that *Pendergraft* applies both to threats of litigation and actual litigation. *Raney*, 370 F.3d at 1088. In *Raney*, the plaintiff alleged that the defendants filed frivolous lawsuits in an effort to extort money from him. *Id.* at 1087. We held unequivocally that "the filing of a lawsuit may not state a claim for extortion under the federal RICO statutes." *Id.*

The material difference between this case and *Pendergraft* or *Raney* is the number of times the defendants allegedly threatened to file a lawsuit or actually sued in an effort to extort money. Indeed, assuming the allegations in the complaint are true, as we must, the defendants have engaged in a pattern of frivolous litigation activity while abusing, on a grand scale, their statutory right to request public documents from the government. Nonetheless, the same concerns driving our decisions in *Pendergraft* and *Raney* are equally present here. Our judicial system, and the Act in particular, encourages citizens to use the courts to resolve public records disputes. Moreover, citizens have a constitutional right to petition the government for redress. We believe that regardless of the scope and scale of the litigation, the courts are amply equipped to deal with frivolous

9

litigation.  *See, e.g.*, *The Florida Bar v. Committe*, 916 So. 2d 741, 749 (Fla. 2005) (sanctioning an attorney for, among other things, "repeatedly attempt[ing] to relitigate the same nonmeritorious issue in an attempt to frustrate the legal process and to harass [an] attorney debt-collector").  Thus, *Pendergraft* and *Raney* control, and the alleged misconduct cannot as a matter of law constitute the predicate act of extortion for purposes of the plaintiffs' civil RICO claim.

The plaintiffs also alleged that the defendants abused their right to request public records; they argue on appeal that this abuse amounted to a RICO predicate act.  As alleged in the complaint, the defendants intentionally set the town up to violate the Act.  Whether it was a setup or not, the town may be on the hook for attorneys' fees if it failed to respond timely to the requests.  *See Bd. of Trustees, Jacksonville Police & Fire Pension Fund v. Lee*, 189 So. 3d 120, 124-25  (Fla. 2016) (holding that once the court determines that the defendant "unlawfully refused" to permit a public record to be inspected or copied, the court must assess reasonable attorneys' fees, whether or not the defendant acted in good faith (citing Fla. Stat. § 119.12)); *Promenade D'Iberville, LLC v. Sundy*, 145 So. 3d 980, 983 (Fla. 1st DCA 2014) (holding that a delay in producing non-exempt public records for no legally sufficient reason constitutes a violation of the Public Records Act).  We nevertheless agree with the district court that the alleged abuse of the Act "must be addressed in the individual lawsuits filed, or through a change in the laws

10

by the Florida Legislature." Doc. 47 at 8. RICO and the Hobbs Act in particular do not provide the remedy the plaintiffs seek.

B.

The plaintiffs next contend that mail and wire fraud constitute the predicate acts necessary to support their RICO claim. Specifically, they argue that O'Hare's use of aliases to avoid incurring a special service charge when lodging public records requests amounted to fraud. We are unpersauded.

"The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "Nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose, either by statute or otherwise." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002); *accord Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (holding that the failure to allege a duty to disclose is fatal to a RICO claim premised on mail fraud arising out of alleged nondisclosure of material information).

Although the plaintiffs argue that O'Hare's concealment of his true identity to avoid incurring a special service charge constituted fraud, they alleged no facts to plausibly suggest that O'Hare had any duty to disclose that information. To the

11

contrary, Florida law recognizes a person's right to request public records anonymously. *See Chandler v. City of Greenacres*, 140 So. 3d 1080, 1084-85 (Fla. 4th DCA 2014) (holding that a city cannot require a public records requester to provide identifying information, which "could have a chilling effect on access to public records and is not required by the Public Records Act"). Accordingly, the plaintiffs failed to allege the predicate acts of mail and wire fraud to support their RICO claim. Because we conclude that the plaintiffs' mail and wire fraud allegations fail on this basis,[6] we do not consider the defendants' alternative reasons for rejecting it.

## IV.

The allegations in the plaintiffs' complaint paint a frustrating picture. Accepting those allegations as true, the defendants have engaged in a concerted effort to capitalize on the relatively unfettered access to public records Florida has granted its citizens by bombarding small towns and municipalities with public records requests to which they cannot respond adequately. As distasteful as this

---

[6] *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

conduct may be, the allegations do not support a RICO claim under our precedent.

We therefore affirm the dismissal of the plaintiffs' complaint.[7]

**AFFIRMED.**

---

[7] Some of the defendants have also filed a motion for sanctions under Federal Rule of Appellate Procedure 38.  We DENY that motion.