# Supreme Court of Florida

_____

No. SC2022-0859
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**BROOKE LYNNETTE GIRLEY,**
Respondent.

_____

No. SC2022-0860
_____

**THE FLORIDA BAR,**
Complainant,

vs.

**JERRY GIRLEY,**
Respondent.

June 26, 2025

PER CURIAM.

We have for review two referee reports recommending that Respondents, Brooke Lynnette Girley and Jerry Girley, be found guilty of professional misconduct in violation of the Rules

Regulating The Florida Bar as well as their Oath of Admission to The Florida Bar and that they both be suspended from the practice of law in Florida for 30 days. Both Respondents have petitioned for review, challenging the referee's recommendations concerning guilt and the recommended sanction.[1]

For the reasons discussed below, regarding Brooke, we approve the referee's findings of fact and recommendations of guilt for violating rules 3-4.3 (Misconduct and Minor Misconduct) and 4-8.2(a) (Impugning Qualifications and Integrity of Judges or Other Officers) and the Oath of Admission. Regarding Jerry, we approve the referee's findings of fact and recommendations of guilt for violating rules 3-4.3, 4-8.2(a), and 4-8.4(d) ("A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice . . . .") and the Oath of Admission. However, we disapprove the referee's recommendation that Jerry be found guilty of violating rule 4-4.1(a) (Truthfulness in Statements to Others). We approve the referee's recommended discipline of a 30-day suspension for both Respondents.

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

**I.**

Jerry is the managing partner of the Girley Law Firm, and Brooke, who is Jerry's daughter, holds an "of counsel" position at the firm. In 2021, Jerry represented Baiywo Rop in a civil lawsuit against Adventist Health System before the Ninth Judicial Circuit. Rop, a native of Kenya, alleged that Adventist Health wrongfully terminated him from its residency program due to discrimination based on race, national origin, and disability. The complaint also alleged retaliation. After Jerry presented Rop's case in chief, Adventist Health moved for directed verdict on all claims. The presiding judge, Judge Kevin Weiss, granted Adventist Health's motion on Rop's claims of discrimination based on national origin and disability. However, he reserved ruling on Rop's claims of discrimination based on race and retaliation. At the conclusion of the trial, the jury returned a verdict in favor of Rop, finding that he proved that his race was a motivating factor in the decision to terminate him, and awarded him compensatory damages in the amount of $2.75 million. After the jury's verdict, Judge Weiss ruled on Adventist Health's earlier motion for directed verdict based on the racial discrimination claim and entered a directed verdict in

favor of Adventist Health, finding that Rop failed to prove a prima facie case of unlawful discrimination based on race under the Florida Civil Rights Act.[2]

After the trial court entered its Order on Directed Verdicts, Brooke reposted on her social media the following posts by her brother Brian Girley, who handles social media for the firm: "Today in Orlando Florida a white Judge stole justice from a black doctor. After being awarded by a jury $2.75 million for discrimination a judge reversed their verdict. We need help getting this out," and "The Girley Law Firm won a case against @AdventHealth where a jury found that they had discriminated against a black doctor and awarded him $2.75 million. Today a white judge stole justice from him. This needs attention!" Brooke posted a picture of Judge

---

2. Judge Weiss's order cited a decision in which this Court recognized the practice of reserving ruling on motions for directed verdict until after the jury returns a verdict for the purpose of conserving resources. *See Ricks v. Loyola,* 822 So. 2d 502, 506 (Fla. 2002) (noting it is an approved practice for trial judges inclined to grant a motion for directed verdict to reserve ruling, allow the jury to return a verdict, and thereafter rule on the motion for directed verdict in order to avoid the need for a costly new trial in case of a reversal on appeal (citing *Gutierrez v. L. Plumbing, Inc.*, 516 So. 2d 87, 88 n.2 (Fla. 3d DCA 1987))).

Weiss with the message that "a white judge stole justice from a black doctor."

In the days following the trial, Brooke made several comments on social media regarding Judge Weiss and the Rop case, such as "[t]his is an injustice. One judge shouldn't be able to overturn a jury verdict," and "the judge did this own [sic] his on [sic] too. No one filed any post-trial motions." Brooke further stated: "I don't believe he had the authority to make this ruling and we need to hold him accountable." In other posts, Brooke commented, "[s]ounds like he needs to be investigated. #RemoveJudgeWeiss," and "[t]he court system is a sham!" She also stated in one post that "[t]he Dres [sic] Scott rule still applies in 2021: 'A black man has no rights which a white man is bound to respect.' Y'all, we can't let this stand. #RemoveJudgeWeiss." In another post, Brooke posted a message claiming that "[e]ven when we win, it only takes one white judge to reverse our victory. . . . This is an injustice and cannot stand." Brooke also posted about organizing a protest rally to "bring attention to fact [sic] that judges are allowed to overturned [sic] jury verdicts and erode our civil rights."

Also, days after the trial court entered its Order on Directed Verdicts, Jerry participated in a couple of online interviews where he made several statements regarding the Rop case, Judge Weiss, and the judiciary. Jerry suggested that judges actively make decisions to reduce or preclude monetary awards for black litigants in discrimination cases and that Judge Weiss was racially biased and exceeded his authority by unlawfully reversing the $2.75 million verdict awarded to Rop, a black litigant. Among other things, Jerry stated that "we have had judges cut the money, find ways to ensure that our clients at the end of the day did not get paid. Now that's what happened last Friday," and "[t]he $2.75 million that was taken by the stroke of a judge's pen, that was a theft," "a theft to the community." Regarding the timing of Judge Weiss's ruling, Jerry stated that Judge Weiss "made a determination six days or five days after the trial that there was not enough evidence presented to cause Dr. Rop to prevail," and while there is a technical mechanism that permits a judge to do so, "this was not one of those circumstances."

Jerry also suggested that the Fifth District Court of Appeal is biased against black litigants, saying:

There are people who have a certain point of view at the appellate court, the Fifth DCA, which sits in Daytona. There's not a single black person there. . . . Okay? So in effect, what we're saying is, to one group of white people, hold this particular person accountable for what he did to these black people. . . . But at the end of the day, this is something that God will have to address, because it's not in the hearts of those in . . . power, and that includes the appellate court, I would say, to right the wrongs that have been committed against us, because it—it makes financial sense to them to keep us in a place where we are beholden to them.

Jerry explained that the courts treat civil rights cases as though they are a waste of time, as "stepchildren," and stated, "[A] $2.75 million verdict, they don't want that out there cause—now everybody that is being discriminated against is gonna step forward and file a claim, and the courts don't want to hear it."

After Brooke's social media posts and Jerry's public statements, Judge Weiss was harassed and received death threats. Judge Weiss had to secure additional security for his protection at the courthouse and at home.

Based on these facts, the referee recommends that Brooke and Jerry both be found guilty of violating rules 3-4.3 (prohibiting acting contrary to honesty and justice) and 4-8.2(a) (forbidding improper impugning of the qualifications or integrity of a judge) as well as the

Oath of Admission (requiring maintenance of respect due to courts and judges). The referee also recommends that Jerry be found guilty of violating rules 4-4.1(a) (prohibiting false statements) and 4-8.4(d) (prohibiting conduct prejudicial to the administration of justice). Concerning discipline, the referee recommends that both Respondents be suspended for 30 days. The referee also recommends that Jerry be required to complete the Bar's Professionalism Workshop.

Both Respondents filed notices of their intent to seek review of the referee's reports, challenging the referee's recommendations of guilt as well as the recommended discipline.

## II.

First, we address Respondents' due process arguments regarding these Bar discipline proceedings. Respondents argue the Bar failed to provide them fair notice of the charges against them. We reject these arguments.

In Bar discipline proceedings, due process requires only that a lawyer receive notice of the Bar's charges and be given an opportunity to be heard. *Fla. Bar v. Committe,* 916 So. 2d 741, 745 (Fla. 2005). These requirements were satisfied here. The Bar's

complaints specifically alleged that Respondents violated the Oath of Admission to The Florida Bar, specified which rules had been violated, and listed the specific statements alleged to be improper.

Respondents also claim that the referee erred in limiting their expert witness's testimony, preventing Respondents from calling Judge Weiss as a witness, and excluding certain evidence that would prove there is racial bias in the legal system. We disagree.

Regarding the admission or exclusion of evidence in Bar disciplinary proceedings, the referee is not bound by technical rules of evidence because "bar disciplinary proceedings are quasi-judicial rather than civil or criminal." *Fla. Bar v. Rotstein*, 835 So. 2d 241, 244 (Fla. 2002); *see Fla. Bar v. Tobkin*, 944 So. 2d 219, 224 (Fla. 2006); *Fla. Bar v. Rendina*, 583 So. 2d 314, 315 (Fla. 1991). Further, we review referees' rulings regarding the admissibility of evidence in Bar discipline cases using an abuse of discretion standard. *See Fla. Bar v. Hollander*, 607 So. 2d 412, 414 (Fla. 1992).

Here, Respondents sought to admit evidence that, generally, there is inequality in the court system. However, Respondents' comments were not just about inequality in the court system.

Many of their statements targeted specific members of the judiciary, and thus the proffered evidence would have been irrelevant to the propriety of those statements.

Respondents also failed to show that the referee abused her discretion in preventing Judge Weiss from testifying. Testimony from Judge Weiss would have been irrelevant to the charges brought against Respondents. The charges related in large part to comments made by the Respondents concerning an order entered by Judge Weiss. That order speaks for itself. The referee correctly rejected the highly improper attempt to require a judge to provide testimony regarding the basis for a judicial decision or other judicial acts. Judges "cannot be subjected to such . . . scrutiny" "regarding the process by which [they] reached the conclusions of [their] order[s]" because "[s]uch an examination of a judge would be destructive of judicial responsibility." *United States v. Morgan*, 313 U.S. 409, 422 (1941). Accordingly, we have recognized the general rule that "judges cannot be compelled to testify as to matters concerning their judicial duties," and we have held that inquiring into a "judge's thought process" is impermissible. *State v. Lewis*, 656 So. 2d 1248, 1250 (Fla. 1994) (quoting Charles W. Ehrhardt,

*Florida Evidence*, § 607.1 at 366 & n.1 (1994)).  The referee did not abuse her discretion in excluding the proffered evidence.

**III.**

Next, we address the referee's findings of fact and recommendations of guilt.  While only Brooke challenges some of the referee's findings of fact, both Jerry and Brooke challenge the referee's recommendations of guilt.

Our review of a referee's findings of fact is limited, and if the findings of fact are supported by competent, substantial evidence in the record, we will not reweigh the evidence and substitute our judgment for that of the referee.  *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)).  Concerning a referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations."  *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)).  Ultimately, the burden is on the party challenging the referee's findings of fact and recommendations of guilt to demonstrate "that there is no evidence in the record to support those findings or that the record evidence clearly

contradicts the conclusions." *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

## Rule 4-8.2(a).

First, we address the referee's recommendation that Respondents be found guilty of violating rule 4-8.2(a). Under rule 4-8.2, a lawyer must not make a statement that the lawyer knows to be false or with reckless disregard of its truth or falsity concerning the qualifications or integrity of a judge.

Brooke challenges the referee's recommendation of guilt and asserts that some of the referee's findings are not supported by the record evidence. Specifically, she objects to the referee's findings that she had very little knowledge about the Rop case but answered questions asked online by non-lawyers who would rely on her interpretation of the law, and that one of Jerry's interviews was posted on the Girley Law Firm's website. Most important to our analysis of the referee's recommendation of guilt, Brooke challenges the referee's findings that she made disparaging and threatening comments about Judge Weiss, injected race into her posts, and implied that Judge Weiss is biased and racist. She submits that the referee wrongfully penalized her for comments made by another.

We reject these arguments. The record evidence demonstrates that Brooke stated in her own posts that Judge Weiss should be "investigated," "held responsible," and "removed" because he acted "on his own," as "no one filed any post-trial motions," and he, thus, lacked the authority to make his ruling. She also knowingly shared social media posts, originally posted by her brother, alleging that Judge Weiss, "a white judge," "stole justice from a black doctor," and suggested in her own posts that Judge Weiss violated Rop's rights because he is black, stating " '[a] black man has no rights which a white man is bound to respect.' Y'all, we can't let this stand. #RemoveJudgeWeiss." Brooke's own statements, along with the ones she chose to repost, clearly had a specific message and were disparaging to Judge Weiss specifically.

Jerry also challenges the referee's recommendation that he be found guilty of violating this rule. He argues that the Bar mischaracterized his words, that he never mentioned Judge Weiss's name, and that his statements were about the court system as a whole. We reject Jerry's arguments as well. The record evidence establishes that Jerry accused the judge presiding over the Rop case, Judge Weiss, of exceeding his authority and finding a way to

"cut the money" and ensure that Rop did not get paid because he is black. He alleged that the judge stole Rop's money by a stroke of a pen, and this was a theft to the black community. Jerry further suggested that the Fifth District Court of Appeal judges are racially biased as well. Jerry asserted that while there is a technical mechanism that allows a judge to enter a directed verdict after a jury enters a verdict, this mechanism was not available in Rop's case.

Respondents made these statements despite Judge Weiss making it clear in his order that he was acting in accordance with legal precedent when he deferred ruling on portions of the motion for directed verdict until after the jury rendered its verdict. Respondents' statements were made with reckless disregard of their truth or falsity, with no objectively reasonable factual basis, and impugned the qualifications and integrity of Judge Weiss and the judges of the Fifth District Court of Appeal.

Respondents further argue that these disciplinary proceedings violate their right to free speech. The First Amendment to the U.S. Constitution provides that Congress "shall make no law . . . abridging the freedom of speech." Respondents are charged with

violating rule 4-8.2(a), which clearly prohibits a lawyer from engaging in certain types of speech. Indeed, under the rule, a lawyer is prohibited from "mak[ing] a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." R. Regulating Fla. Bar 4-8.2(a).

The type of restriction imposed on lawyer speech by rule 4-8.2(a) is not new. *See Bradley v. Fisher*, 80 U.S. 335, 355 (1871) ("[T]he obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts."); *In re Shimek*, 284 So. 2d 686, 690 (Fla. 1973) ("It would be contrary to every democratic theorem to hold that a judge or a court is beyond bona fide comments and criticisms which do not exceed the bounds of decency and truth or which are not aimed at the

destruction of public confidence in the judicial system as such. However, when the likely impairment of the administration of justice is the direct product of false and scandalous accusations then the rule is otherwise."). Moreover, we have previously explained that rule 4-8.2(a) is "designed to preserve public confidence in the fairness and impartiality of our system of justice," since "members of the Bar are viewed by the public as having unique insights into the judicial system." *Fla. Bar v. Ray*, 797 So. 2d 556, 558-59 (Fla. 2001). The U.S. Supreme Court has recognized that restrictions on speech aimed at "protecting the integrity of the judiciary" and "maintaining the public's confidence in an impartial judiciary" serve a compelling state interest and do not violate the First Amendment. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015) (quoting *Fla. Bar v. Williams-Yulee*, 138 So. 3d 379, 386 (Fla. 2014)). Thus, we reject Respondents' arguments that these proceedings violate their rights to free speech under the First Amendment.[3]

---

3. Respondents also argue that these proceedings violate their rights to religious freedom and their rights under the equal protection clause. However, we decline to consider these arguments because they were not made before the referee. *See Wright v. State*,

- 16 -

Accordingly, we approve the referee's recommendation that Respondents be found guilty of violating rule 4-8.2(a).

## Rule 3-4.3.

Respondents also challenge the referee's recommendation that they be found guilty of violating rule 3-4.3. Rule 3-4.3 states, in part: "The commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline whether the act is committed in the course of the lawyer's relations as a lawyer or otherwise . . . ." Based on the misconduct above, we approve the referee's recommendation of guilt under rule 3-4.3. *See Fla. Bar v. Cocalis*, 959 So. 2d 163, 166-67 (Fla. 2007) (finding a lawyer violated rule 3-4.3 by engaging in unprofessional and unethical conduct).

---

920 So. 2d 21, 23 (Fla. 4th DCA 2005) (stating that constitutional issues not raised at trial cannot be raised for the first time on appeal unless the error meets the criteria of fundamental error); *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970) (stating that fundamental error, which can be raised on appeal without objection in the lower court, is error that goes to the foundation of the case or goes to the merits of the cause of action).

## Oath of Admission.

Respondents also challenge the referee's recommendation that they be found to have violated the Oath of Admission to The Florida Bar, which requires Florida lawyers to maintain the respect due to courts of justice and judicial officers. Respondents repeatedly made statements suggesting that Judge Weiss was racist and exceeded his authority in reversing a $2.75 million verdict awarded to a black litigant. Respondents essentially led a campaign against Judge Weiss in retaliation for his judicial decision in a case handled by their firm. We, thus, approve the referee's findings of fact and recommendation that Respondents be found guilty of violating their Oath of Admission.

## Rule 4-8.4(d).

We also find that in doing so, Jerry, who represented Rop before the circuit court, violated rule 4-8.4(d), which prohibits conduct that is prejudicial to the administration of justice. Jerry's statements were widely disseminated and caused prejudice to the administration of justice. Judge Weiss even received death threats and had to secure additional security detail for his protection. We

approve the referee's findings of fact and recommendation that Jerry be found guilty of violating rule 4-8.4(d).

### Rule 4-4.1(a).

The referee also recommends that Jerry be found guilty of violating rule 4-4.1(a), which prohibits a lawyer from knowingly making a false statement of material fact or law to a third person in the course of representing a client. Again, Jerry submits the referee's recommendation of guilt is not supported by the record evidence. While the record evidence shows some of Jerry's disparaging statements were made during an interview alongside Rop after Rop appealed Judge Weiss's decision, it is not entirely clear from the record, and the referee made no specific findings regarding whether Jerry's statements were made in the course of representing Rop. We, thus, decline to approve the referee's recommendation of guilt under rule 4-4.1(a). *See Shoureas*, 913 So. 2d at 558 (declining to approve the referee's recommendation of guilt concerning a rule violation for lack of findings or competent, substantial evidence).

**IV.**

We now turn to the referee's recommendation that Respondents be suspended for 30 days. "Prior to making a recommendation as to discipline, referees must consider the Standards for Imposing Lawyer Sanctions, which are subject to aggravating and mitigating circumstances, and this Court's existing case law." *Fla. Bar v. Strems,* 357 So. 3d 77, 90 (Fla. 2022). Our review of a referee's recommended discipline is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. *See Fla. Bar v. Patterson,* 257 So. 3d 56, 64 (Fla. 2018); *Fla. Bar v. Anderson,* 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

First, we find support in the Standards for suspension as the presumptive sanction for both Respondents. Under Standard 7.1(b) (Deceptive Conduct or Statements and Unreasonable or Improper Fees), "[s]uspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Here, with reckless disregard of their truth or falsity, Respondents made public statements accusing

Judge Weiss of being racist and reversing the $2.75 million jury verdict because Rop is black. Respondents' statements eroded the public's confidence in the legal system and even led to death threats directed at Judge Weiss. Suspension is appropriate based on these facts.

Next, we consider the referee's findings regarding the applicable aggravating and mitigating circumstances. "[A] referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Germain*, 957 So. 2d at 621. Regarding both Respondents, the referee found the following factors in aggravation under Standard 3.2(b) (Aggravation): (1) a pattern of misconduct; (2) substantial experience in the practice of law; and (3) refusal to acknowledge the wrongful nature of the conduct. Under Standard 3.3(b) (Mitigation), the referee found the following factors in mitigation in both cases: (1) the absence of a prior disciplinary record; and (2) character or reputation. Regarding Brooke, the referee found three additional mitigating factors: (1) full and free disclosure to the Bar or cooperative attitude toward the proceedings; (2) the absence of dishonest or selfish motive; and (3)

the imposition of other penalties or sanctions.[4]  Both Respondents

challenge the referee's finding of a pattern of misconduct.  However,

although Respondents' misconduct occurred during a few weeks,

not a longer span of time, Respondents repeatedly made statements

impugning Judge Weiss's integrity on various platforms.  The

referee's finding is supported by the record.  *See Fla. Bar v. Parrish*,

241 So. 3d 66, 80 (Fla. 2018).

Concerning the appropriate term of suspension, we also look

to prior cases for guidance.  In prior cases involving similar

misconduct, we have imposed suspensions in a range of lengths.

For instance, in *Florida Bar v. McCallum*, No. SC2018-0604, 2019

WL 6873032 (Fla. Dec. 19, 2019), we suspended for 15 days an

attorney who made unfounded accusations against two judges in

letters to the chief judge and general counsel of the circuit court in

violation of rules 3-4.3, 4-8.2(a), and 4-8.4(d).  In *Florida Bar v.*

*Tropp*, 112 So. 3d 101 (Fla. 2013), we publicly reprimanded Tropp

and placed him on a three-year probation for violating rules 4-8.2(a)

---

4.  Although Brooke passed the New Jersey bar examination, consideration of her admission in New Jersey was abated during the pendency of these proceedings.

and 4-8.4(d), among others, when he filed a motion to disqualify alleging the judge presiding over post-dissolution proceedings in Tropp's divorce case had an improper, essentially ex parte discussion with Tropp's ex-wife's attorney concerning support payments but failed to state that Tropp's co-counsel was present during the discussion.  We've also imposed harsher sanctions for similar misconduct.  In *Florida Bar v. Jacobs*, 370 So. 3d 876, 884 (Fla. 2023), we suspended for 91 days an attorney found guilty of three counts of violating rule 4-8.2(a) after he accused named and unnamed judges of "acting outside the law, allowing banks to perpetrate fraud with impunity, and betraying the Constitution to protect the interests of financial monopolies."  Also, in *Florida Bar v. Norkin*, 132 So. 3d 77 (Fla. 2013), we publicly reprimanded and suspended an attorney for two years, followed by probation, for making disparaging comments regarding several judges, behaving in an unprofessional manner, and disrupting court proceedings, in violation of rules 4-8.2(a) and 4-8.4(d), among others.

In considering these cases, along with the aggravating and mitigating factors found in the instant cases, we have determined that a 30-day suspension for both Respondents is appropriate.

## V.

Accordingly, regarding Brooke Lynnette Girley, we approve the referee's findings of fact and recommendations of guilt under rules 3-4.3, 4-8.2(a), and the Oath of Admission to The Florida Bar. Further, we approve the referee's recommended sanction and Brooke is hereby suspended from the practice of law for 30 days, effective 30 days from the date of this opinion so that she can close out her practice and protect the interests of existing clients. If Brooke notifies this Court in writing that she is no longer practicing and does not need the 30 days to protect existing clients, we will enter an order making the suspension effective immediately. Brooke shall fully comply with rule 3-5.1(h), and if applicable, rule 3-6.1. In addition, Brooke shall accept no new business from the date this opinion is issued until she is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Brooke Lynnette Girley in the amount of $3,643.03, for which sum let execution issue.

Regarding Jerry Girley, we approve the referee's findings of fact and recommendations of guilt in part and find him guilty of

violating rules 3-4.3, 4-8.2(a), and 4-8.4(d), as well as the Oath of Admission to The Florida Bar. We disapprove the referee's findings under rule 4-4.1(a) and find Jerry not guilty of violating that rule. Moreover, we approve the referee's recommended sanction. Jerry is hereby suspended from the practice of law for 30 days, effective 30 days from the date of this opinion so that he can close out his practice and protect the interests of existing clients. If Jerry notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, we will enter an order making the suspension effective immediately. Jerry shall fully comply with rule 3-5.1(h), and if applicable, rule 3-6.1. In addition, Jerry shall accept no new business from the date this opinion is issued until he is reinstated. Jerry is directed to attend The Florida Bar's Professionalism Workshop under the terms and conditions of the report and to comply with all other terms and conditions of the report.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Jerry Girley in the amount of $5,357.40, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE SUSPENSIONS.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida, and Ashley Taylor Morrison, Bar Counsel, The Florida Bar, Orlando, Florida,

    for Complainant

Jerry Girley and Brooke Girley of The Girley Law Firm, P.A., Orlando, Florida,

    for Respondent

Jerry C. Edwards and Daniel B. Tilley of American Civil Liberties Union Foundation of Florida, Inc., Miami, Florida, and Brian L. Frye, Spears-Gilbert Professor of Law, University of Kentucky, Lexington, Kentucky,

    for Amicus Curiae American Civil Liberties Union Foundation of Florida, Inc.